## STANTON v. HAMILTON.

(Circuit Court of Appeals, Ninth Circuit. April 4, 1921.)

No. 3538.

1. Corporations ☞320(1)—Unavailing rescission no defense to recovery against one making secret profit, where the original contract was carried out.

Where plaintiff, a stockholder, who sold his shares in connection with the sale by the corporate president of his own shares, sued the president to recover on account of an alleged secret profit made by him, the fact that plaintiff attempted to rescind the original contract on the buyer's default, etc., is no defense to recovery, unless plaintiff thereafter entered

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

into a new and independent contract, based on a new consideration, whereby he sold his shares, and, if he made the sale merely on representations that the buyer would by suit enforce the original contract, his attempted rescission will not prevent recovery.

2. **Corporations** ☞320(11½)—Whether there was rescission of original contract, so that recovery could not be had against defendant, who made secret profit, held for the jury.

In an action by a stockholder, who sold his shares in connection with the sale by the corporate president of his own stock, to recover a secret profit made by the president, etc., where the president contended that the stockholder rescinded the original contract and disposed of his shares pursuant to a new contract with the buyer, *held* that, under the evidence, the question whether there was a rescission was for the jury.

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Action by J. L. Hamilton against E. H. Stanton. Judgment for plaintiff, and defendant brings error. Affirmed.

Action at law to recover $21,926.67, with interest thereon from May 21, 1917, alleged to be due the plaintiff in a transaction involving the sale to Armour & Co., of Chicago, of 1,096⅓ shares of stock owned by the plaintiff in the E. H. Stanton Company, of Spokane, Wash. The case was tried before a jury, which rendered a verdict in favor of the plaintiff for $25,109.06. Judgment accordingly.

Jas. A. Williams and Danson, Williams & Danson, all of Spokane, Wash., for plaintiff in error.

William G. Graves, Graves, Kizer & Graves, Lee & Kimball, and W. E. Cullen, all of Spokane, Wash., for defendant in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. The issues in this case are the same as in Stanton v. Hample, 272 Fed. 424, just decided, with the exception that in this case the defendant claims that there was a rescission of the original contract of sale on the part of Hamilton, and the delivery of his stock upon a new contract, after he knew all the facts concerning the sale of Stanton's stock. It appears that Hample's contract provided that his stock should be deposited in the First National Bank at Butte, Mont., and that Armour & Co. should pay for it there within a stated time. Hamilton's contract was substantially the same, except that it called for the deposit of his stock in the Bank of W. A. Clark & Bro., in Butte, Mont. By mistake Armour & Co. sent payment for both stocks to the First National Bank. Hamilton waited until the time for the payment had expired, then on May 31, 1917, withdrew the stock. On June 4th, Hamilton notified Armour & Co. by telegraph that their failure for 10 days to comply with their contract released him. Armour & Co. telegraphed Hamilton on the same day that their deposit of draft and notes was by mistake made in the First National Bank, instead of the Clark Bank, and was an error, and that the draft and notes had been turned over to the Clark Bank. Armour

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
272 F.—28

& Co. thereupon telegraphed to Don Kizer, the attorney for E. H. Stanton, at Spokane, that there was some trouble over the Hamilton stock, and in a second telegram Armour & Co. requested Kizer to go to Butte and arrange to have Hamilton comply with his contract, or to bring action to compel him to do so. Kizer proceeded to Butte, saw Hamilton, and threatened him with suit to compel him to perform. Hamilton consulted an attorney, who examined the contract and advised Hamilton that the original contract contained a clause, "Time is of the essence," etc., but the date of the payment of the money and deposit of the notes being somewhat short, the contract was altered to read, "Armour & Co. should pay said money and notes into the bank on or about May 25, 1917," and the clause with reference to time being the essence of the contract was stricken out. The attorney advised Hamilton that the only legal damages sustained by him was interest on the amount that was to be paid to him from the date it should have been paid until it was actually tendered to him.

The evidence tends to show that Hamilton acted on this advice, and after some negotiations, on June 22d, or 23d, he delivered his 1,096⅓ shares to Armour & Co., and on June 25th they gave him their check and notes in accordance with the terms of the original Spokane contract. In the meantime Hamilton had purchased 772 shares of the stock of Stanton Company from one Overholt. This stock was also purchased by Armour & Co. from Hamilton, and paid for at the price of $220 per share. The contention of the defendant Stanton is that the evidence shows that Armour & Co. finally acquiesced in Hamilton's repudiation of the Spokane contract, and a new agreement was made, and Armour & Co. agreed to buy the Overholt stock for $220 per share, and that Hamilton agreed that, in consideration of the sale of that stock for that price, he would sell his own original stock for $200 per share, as fixed in the Spokane contract.

[1] The plaintiff contends, on the other hand, that the evidence shows that Armour & Co. did not acquiesce in plaintiff's attempt to rescind, but threatened a suit to enforce the contract, and that Hamilton, influenced by that threat and the advice of counsel that he could not rescind, yielded to the demand of Armour & Co. and transferred his stock as provided in the Spokane contract. The plaintiff further insists that the sale of the Overholt stock was an independent transaction. The court instructed as follows:

"If you find from the evidence that the plaintiff deposited his stock according to the terms of the written contract signed by him and Armour & Co., but that Armour & Co. failed to deposit the money and notes in the bank as provided in the contract on or before the day named therein, and that thereafter the plaintiff withdrew his stock so deposited from the bank, and notified Armour & Co. that he repudiated his contract and would not live up to the same, claiming that he had been induced to enter into the contract through misrepresentation and fraud, and thereafter the plaintiff entered into a new and independent contract with Armour & Co. for a new consideration, whereby he sold the stock in question, together with other stock in the same company, and that Armour & Co. paid him therefor part in money and part in promissory notes, then you must find for the defendant in this action, even though as to the other issues stated above you should find that the evidence is in favor of the plaintiff.

"If, however, you find from the preponderance of the testimony that the stock was finally delivered to Armour & Co., pursuant to the contract made and entered into in the city of Spokane, and not pursuant to some new and independent contract, the attempt on the part of the plaintiff Hamilton to rescind his contract will not bar a recovery."

The first part of this instruction was requested by the defendant, with the exception that the court, in referring to the new contract claimed by the defendant to have been made by plaintiff with Armour & Co., instead of calling it "another contract," as in the requested instruction, instructed the jury that, if it was a "new and independent contract with Armour & Co. for a new consideration," then they should find for the defendant. The court was entirely correct in making this change in the instruction. The jury could not find for the defendant merely upon the making of "another contract," but, as corrected and qualified by the court, upon a "new and independent contract for a new consideration," the jury might properly find for the defendant.

[2] The last part of the instruction as given above was added by the court. The objection to it urged by the defendant is that it clearly appears from the evidence that plaintiff had repudiated his contract and withdrawn his stock from deposit, and it was wholly immaterial whether plaintiff, subsequently delivering the stock to Armour & Co., did so pursuant to the original contract, or under a new and independent contract; that the rescission was complete and returned the parties to their previously existing rights, and that the delivery of the stock to Armour & Co. after that must have been under a new contract; but the question whether there was a rescission, and the delivery of the stock upon a new and independent contract for a new consideration, was a question of fact for the jury, which was properly submitted to it for its determination.

Finding no error in the record, the judgment of the District Court is affirmed.